**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | 10-0203M |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Jeffrey William Varnes, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

After considering all the evidence, the proffers, and arguments of counsel at the May 11 and May 19, 2010 detention and identity hearings, the Court **FINDS** as follows:

## **THE CHARGES**

1. On April 2, 2010, a federal grand jury sitting in the United States District Court for Western District of Michigan returned a two-count indictment against Defendant and his brother, Jason Timothy Varnes, charging each with Arson of a building (Count 1) in violation of 18 U.S.C. § 844(i) and § 2 and Conspiracy to commit Arson of a building (Count 2) in violation of 18 U.S.C. § 844(i) and 18 U.S.C. § 844(n).

2. By virtue of the grand jury's return of its indictment, probable cause exists that Defendant committed the crimes of Arson and Conspiracy on February 24, 2009 in violation of the previously mentioned statutes.

3. The elements necessary to convict under section 844(i)[1] are that the defendant: (1) maliciously damaged or destroyed personal property; (2) that he did so by means of fire; and (3) that the property was either being used in interstate commerce or in an activity affecting interstate commerce. 18 U.S.C. § 844(i); *Jones v. United States*, 529 U.S. 848 (2000) (an owner-occupied residence not used for any commercial purpose does not qualify as "property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce" within meaning of the federal arson statute, and arson of such a dwelling is not subject to federal prosecution under the statute); *United States v. Renteria*, 557 F.3d 1003, 1008 (9th Cir. 2009).

4. The Court finds that the malicious burning of any building, vehicle, or other real or personal property proscribed by 18 U.S.C. § 844(i) is a "crime of violence" as defined by 18 U.S.C. § 3156(a)(4)).[2] *Mbea v. Gonzales*, 482 F.3d 276, 280 (4th Cir. 2007); *United States v. Mitchell*, 23 F.3d 1, 2 n. 3 (1st Cir. 1994) (*per curiam*) (holding that federal arson

---

[1] Title 18 U.S.C. 844(i) provides:

> (i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire . . . any building . . . used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce **shall be imprisoned for not less than 5 years and not more than 20 years**, fined under this title, or both . . . .

18 U.S.C. 844(I) (emphasis added).

[2] Section 3156(a)(4) defines "crime of violence" as:

> (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, [or]
>
> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Title 18 U.S.C. § 3156(a)(4).

as set forth in 18 U.S.C. § 844(i) is a "crime of violence" under 18 U.S.C. § 3156(a)(4)); *United States v. Pereira*, 454 F.Supp.2d 40, 43 (D.Mass. 2006); *United States v. Marzullo*, 780 F.Supp. 658, 662 & n. 7 (W.D.Mo. 1991); *United States v. Shaker*, 665 F.Supp. 698, 702 n. 4 (N.D.Ind. 1987).

5. Although arson is not one of the crimes identified in 18 U.S.C. § 3142(e)(3) that creates a rebuttable presumption of detention, the Bail Reform Act allows the Government to argue that, in addition to being a serious flight risk, Defendant should be detained as a danger to the community because arson is a crime of violence. 18 U.S.C. § 3142(f)(1)(A)[3]; *United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992) (unless otherwise authorized in the Bail Reform Act, the Act precludes a defendant's detention on the basis of his release poses a danger to the community unless the crime charged is a "crime of violence.").

## **THE EVIDENCE**

6. Defendant is 37 years of age, was born in Mesa, Arizona, and is a lifelong resident of Arizona. Defendant's parents are divorced. His mother lives in Mesa and his father resides in Michigan. Defendant reports his father is currently hospitalized in Michigan. Defendant indicates he has three brothers; two reside in Michigan and one resides in Casa Grande, Arizona. Defendant acknowledges no regular or meaningful contact with his mother,

---

[3] Title 18 U.S.C. § 3142(f)(1)(A) provides:

(f) Detention hearing.--The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community--

(1) upon motion of the attorney for the Government, *in a case that involves--*

(A) *a crime of violence*, . . . .

18 U.S.C. § 3142(f)(1)(A) (emphasis added).

his siblings, or his 21-year old son who resides in Florence, Arizona. Defendant reports a 10-year relationship with his fiancé, Vicky Gonzalez, who has no criminal history. Defendant, who owns no real property or other assets, resides with his fiancé in Scottsdale and, according to Ms. Gonzalez, he contributes to their household expenses when he can.

Defendant is, and has been, unemployed for approximately two years, purportedly due to the slow economy, and has been a member of the Engineer Union since 1989.

Defendant has no known criminal convictions prior to 2000. On July 13, 2000, Defendant was convicted of Failure to Comply with Court Orders and, according to the May 5, 2010 Pretrial Services' ("PTS") Report, Defendant spent 12 days in jail. (docket # 2 at 2) He had two traffic convictions in 2002, which included Driving on a Suspended License. His Arizona driver's license is currently suspended. In 2003, Defendant was sentenced to the Arizona Department of Corrections for two years for either a drug-related offense or possessing a prohibited weapon. There is no disposition on the failure-to-appear charge. On October 17, 2006, Defendant was convicted of Reckless Driving in the Gilbert Municipal Court in Gilbert, Arizona for which he received 4 days in jail and apparently placed on probation. A misdemeanor arrest warrant was issued for Defendant's arrest on February 20, 2008 for alleged violation(s) of his probation. Bond is currently set at $1733.00.

7. The Court takes judicial notice of the pubic record of, and case against, Co-defendant Jason Timothy Varnes by review of the Western District of Michigan's electronic case file. A district court may take judicial notice of matters of public record. *United States v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008) (district court "may take judicial notice of matters of public record."); Fed.R.Evid. 201(b) (defining the scope of judicial notice).

On April 7, 2009, Co-defendant Jason Timothy Varnes was arrested on the same indictment returned against Defendant, initialed, and released on a $5,000 unsecured appearance bond and other conditions by Magistrate Judge Ellen S. Carmody. (docket ## 1, 7-9 in 1:09-cr-102) There is no evidence of his failure to appear at any court proceedings.

1  A jury trial commenced before the Honorable Gordon J. Quist, United States District Judge,
2  on December 15, 2009 and ended on December 18, 2009 with guilty verdicts on both Counts.
3  (*Id.* at 67) Co-defendant Jason Timothy Varnes was sentenced to 68-months imprisonment
4  on each count to be served concurrently; 3 years supervised release on each count to run
5  concurrently; $154,256.50 in restitution; a fine was waived; and $200 in special assessments
6  were imposed. (*Id.* at 75-76)  A notice of appeal was filed on May 5, 2010. (*Id.* at 77)

The Court has reviewed the September 29, 2009 Trial Brief submitted by Michigan AUSA Timothy P. VerHey in the case against Co-defendant Jason Timothy Varnes to corroborate or dispute the reliability of Arizona AUSA Vince Kirby's proffers made in open court during this detention hearing. (*Id.* at 34)  AUSA VerHey represented the following pretrial proffer of the facts or evidence to Judge Quist:

> These charges arise from a fire at 408 N. Rath Avenue, in Ludington, Michigan. In the early morning hours of February 24, 2009, this structure, which housed four separate occupied apartments, caught fire. The fire was discovered by the occupants of the apartments at about 3:30 in the morning. The fire did a substantial amount of structural damage to the building but no one was hurt. Arson investigators determined that the fire was an arson and that someone had ignited the blaze by pouring gasoline outside the exterior door of Apartment No. 4, an upstairs unit accessible by an exterior stairway.
>
> Investigators learned that the occupants of Apartment No. 4 had been in an argument with others in the hours leading up to the fire. The argument originated in a drug deal gone bad: a woman named Sierra Trivisonno contacted Christian Mitchell, an acquaintance of Trivisonno's, to inquire about purchasing cocaine. Mitchell, who at the time was visiting friends at Apartment No. 4, told Trivisonno that he could secure the drugs. Trivisonno, who was setting up the deal **on behalf of Jason and Jeffrey Varnes**, agreed to buy a quantity of cocaine from Mitchell and arranged a meeting place.
>
> Shortly thereafter, Mitchell and his friend Jeffrey Patterson – a resident of Apartment No. 4 – met Trivisonno and Jason Varnes at Varnes's pickup truck as it was parked on a nearby street. Mitchell and Patterson took the money and promised to return with drugs, but they did not, having always intended to steal the money. Trivisonno called Mitchell on his cell phone to ask about the drugs; Aryiel Wagner, who was with Mitchell and Patterson at Apartment No. 4, answered the phone and told Trivisonno not to bother them. Varnes, believing Mitchell and Patterson had entered Apartment No. 4, ran up to the door and knocked. Varnes demanded his money or the drugs, but left after he was told that no one there knew what he was talking about.
>
> After this incident, Trivisonno and Jason Varnes returned to the apartment of Trivisonno's friend, Tabatha Humphreys, located at 305 East Ludington Avenue (about four blocks away). A number of angry cell phone calls followed, with demands that the money be returned "or else." Witnesses say

these phone calls were made using cell phones belonging to Sierra Trivisonno, Jason Varnes and Christian Mitchell, and cell phone records confirm the contacts. During these phone conversations, **the Varnes brothers** positively learned that Wagner, Mitchell, Patterson and others were at 408 N. Rath Avenue, Apartment No. 4.

The phone calls by the **Varneses** and Trivisonno did not secure the return of the money, and the **Varneses** stated to witnesses that they were going to retaliate. They claimed that they had burned down the house of someone who had ripped them off in the past, and discussed making Molotov cocktails to set the N. Rath Avenue apartment on fire. **The Varnes brothers** then went to a local Wesco gas station, where security cameras recorded Jason Varnes dispensing a small quantity of gasoline into a container sitting on the ground next to his truck, and then paying for the gasoline inside the store. This occurred approximately one hour before the fire was discovered.

**The Varneses** then drove to 408 N. Rath Avenue but returned to Humphreys' apartment at 305 East Ludington Avenue shortly thereafter, stating that there were police at the N. Rath Avenue apartment. (Police records confirm that officers responded to a noise complaint at 408 N. Rath between 2:15 and 2:30 am on February 24.) After remaining at Humphreys' apartment for a short time, **the Varnses** (sic) left again.

Witnesses present at 408 N. Rath Avenue at the time of the fire observed a dark pickup truck with a loud exhaust parked in an alley next to the house just before the fire started. This description is consistent with Jason Varnes's truck. They also report seeing an individual wearing a hooded sweatshirt walking near 408 N. Rath Avenue, and then, minutes later, standing on the balcony outside Apartment No. 4. The physical description is consistent with Jason Varnes; the hooded sweatshirt is consistent with what he was wearing that night according to the gas station video and clothing subsequently seized from his residence.

The Ludington police questioned **the Varneses** on February 25 and executed a search warrant at their residence. **The police found clothing matching what the two men wore in the gas station videos**. They both initially stated they had not been in Ludington on either February 23 or 24. After being confronted about the Wesco security video, Jason later admitted that he had been in Ludington that night; had been with a girl named "Sierra"; and had bought gas at the Wesco station. He denied attempting to buy drugs or setting a fire. He also claimed that he had put the gas in the gas tank of the truck. **Jeffrey Varnes** maintained that he had not been in Ludington on the night of the fire. After the police contact, **the Varneses** told Trivisonno that they were going to blame the fire on her.

(*Id*. at 1-4) (emphasis added).

8. The Court finds that although the focus of the assigned Michigan prosecutor's description of the alleged facts was on Co-defendant Jason Timothy Varnes whose trial was nearing, sufficient information was shared with Judge Quist regarding Defendant's involvement to sufficiently corroborate the Arizona prosecutor's proffer of

- 6 -

| | |
|---|---|
| 1 | Defendant Jeffrey William Varnes' direct involvement with, or the aiding and abetting in, |
| 2 | the subject arson. |
| 3 | 9. In light of the objective and witness evidence adverse to Defendant, his |
| 4 | brother's convictions on both counts, and notwithstanding his presumption of innocence, the |
| 5 | Government appears to have a very strong case against Defendant. |
| 6 | 10. It is undisputed that when the two deputy U.S. Marshals attempted to arrest |
| 7 | Defendant when he opened the front door at his girlfriend's and his residence in Scottsdale |
| 8 | on May 3, 2010, Defendant denied he was Jeffrey William Varnes, claimed he was Shawn |
| 9 | Vogels, and refused to accept the Deputy U.S. Marshals' official badges and identification |
| 10 | each presented to him until one of the Marshals called the Scottsdale Police Department and |
| 11 | marked units and uniformed police arrived at Defendant's residence. Prior to arresting |
| 12 | Defendant, the Deputy Marshals identified the person who opened the front door when they |
| 13 | knocked on the door as Defendant Jeffrey William Varnes. |
| 14 | 11. The Court finds after the Deputy Marshals presented their official badges |
| 15 | and identification to Defendant verifying who they were, Defendant's claim that he didn't |
| 16 | believe the Marshals were acting in their official capacity is not credible because he likely |
| 17 | knew of his brother's conviction in Michigan, likely knew he was similarly charged as his |
| 18 | brother, and likely knew a warrant was issued in Michigan for his arrest. His comment while |
| 19 | on the phone at the front door in the presence of the Deputy Marshals, "they got me" or |
| 20 | something similar, confirms such prior knowledge. While Defendant did not attempt to flee |
| 21 | the Deputy U.S. Marshals or slam the door on them, Defendant's intentional deception |
| 22 | supports an inference of an untrustworthy character. |
| 23 | 12. As a result of the apparently strong case against Defendant, his brother's |
| 24 | conviction on the same charges and a 68-month prison sentence, Defendant's prior criminal |
| 25 | history, and the statutory minimum prison sentence of 60 months, Defendant is likely |
| 26 | sufficiently motivated to flee the Michigan prosecution if released from custody with |
| 27 | conditions. *United States v. Gentry*, 455 F.Supp.2d 1018, 1020 (D.Ariz. 2006) ("[D]istrict |
| 28 | court [may] consider possible punishment as an incentive for a defendant to flee in assessing |

a defendant's risk of flight.") (citing *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990)).

**CONCLUSIONS**

Considering all the factors set forth in 18 U.S.C. § 3142(g) discussed in this Order, including, but not limited to, that Defendant is unemployed, owns no real property or significant assets in the District of Arizona, has few meaningful relationships to tie him to Arizona, a history of failing to comply with court orders, a Gilbert warrant for his arrest for allegedly violating the terms of his misdemeanor probation, his intentional attempt to disguise his true identity when initially confronted by the Deputy Marshals on the day he was arrested, and his incentive to flee a likely significant prison sentence, the Court **FINDS**:

1. the Government has sustained its burden of proof by a preponderance of the evidence that Defendant is a serious flight risk,

2. the Government has failed to sustain its burden of proof by clear and convincing evidence that Defendant is a danger to the community, and

3. the Government has sustained its burden of proof by a preponderance of the evidence that the person before the Court is Defendant Jeffrey William Varnes.

Accordingly,

**IT IS ORDERED** that the Defendant Jeffrey William Varnes shall be detained as a serious flight risk until further order of the Western District of Michigan.

Dated this 20th day of May, 2010.

_____
Lawrence O. Anderson
United States Magistrate Judge